# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 2000 Session

## STATE OF TENNESSEE v. RUSSELL E. MILLS

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-199-28-A     Timothy L. Easter, Judge**

_____

**No. M1999-2505-CCA-R3-CD - Filed September 15, 2000**

_____

The appellant, Russell E. Mills, pled guilty in the Williamson County Circuit Court to vehicular homicide as the proximate result of his intoxication, a class B felony. The parties agreed that the trial court would determine the appropriate sentence. Accordingly, the trial court conducted a sentencing hearing and sentenced the appellant as a Range I offender to eleven years incarceration in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's sentencing determination. Following a review of the record and the parties' briefs, we modify the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Modified.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

John S. Colley, III, Columbia, Tennessee, for the appellant, Russell E. Mills.

Paul G. Summers, Attorney General and Reporter, Lucian D. Geise, Assistant Attorney General, Ron Davis, District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, Russell E. Mills, appeals the trial court's imposition of a sentence of eleven years incarceration in the Tennessee Department of Correction upon his plea of guilty to vehicular homicide. The appellant contends that the trial court erroneously applied enhancement factors and failed to apply mitigating factors in determining the length of his sentence. According to the appellant, he satisfied the criteria for an especially mitigated offender and, moreover, was an appropriate candidate for probation. Upon a de novo review of this case, we modify the judgment of the trial court.

### I.  Factual Background

The record of both the guilty plea hearing and the sentencing hearing reflect that the appellant's plea of guilty to vehicular homicide arose from a traffic accident on Highway 31 in Williamson County in the early morning hours of September 27, 1998. The record indicates that,

on the night of September 26, 1998, and in the early morning hours of September 27, the appellant and his companion, Susan Bassham, visited the Music City Mix Factory in Nashville. The appellant was driving Ms. Bassham's car, having left his own vehicle at Ms. Bassham's residence. En route to the Music City Mix Factory, the appellant and Ms. Bassham purchased a six-pack of beer, drinking several of the beers. They also stopped at a "haunted house." Ultimately, they arrived at the club, where the appellant drank another four or five beers and a "shooter." Subsequently, at approximately 4:54 a.m., the appellant was driving Ms. Bassham's vehicle on Highway 31, and Ms. Bassham was in the passenger's seat. The appellant swerved into the opposing lane of traffic and collided with a vehicle driven by Charles Incanella. Mr. Incanella, who was driving home from work, was killed in the collision.

Following the accident, several troopers with the Tennessee Highway Patrol arrived at the scene. The appellant appeared to be intoxicated at that time. Moreover, the troopers discovered a six-pack of beer, containing three or four empty bottles, and two "shooter" glasses labeled "Music City Mix Factory" inside Ms. Bassham's vehicle. Almost four hours after the accident, testing revealed that the appellant's blood alcohol content was 0.11.

Both the appellant and Ms. Bassham were indicted for vehicular homicide. On July 27, 1999, the appellant pled guilty in the Williamson County Circuit Court to vehicular homicide as the proximate result of his intoxication. The appellant and the State agreed to allow the trial court to determine the appropriate sentence. Accordingly, the trial court conducted a sentencing hearing on October 19, 1999.

The evidence adduced at the sentencing hearing, including the pre-sentence report, reflects that the appellant does not have a prior history of criminal activity nor a prior history of alcohol abuse. Moreover, the appellant graduated from high school in 1990 and has been steadily employed since his graduation, most recently by American Bank Note in Columbia, Tennessee. In addition to his regular, full-time employment, the appellant worked with the Columbia Fire Department from 1995 to 1998 and was a reserve police officer with the Columbia Police Department from 1997 to 1998. According to the testimony of several officers of the Columbia Police Department, the appellant was a good officer, who frequently worked more than his required hours. The appellant is currently married to his co-defendant, Ms. Bassham. He also has two children by a prior marriage and, before his offense, exercised visitation with his children every other week and paid child support. The appellant's mother, Sandy Mills, testified at the sentencing hearing and confirmed that the appellant has been both a good son and a good father. Ms. Mills also asserted that the appellant has expressed to her his remorse for this offense. The appellant declined to testify on his own behalf at the sentencing hearing.

Numerous relatives and friends of Mr. Incanella testified at the sentencing hearing. In particular, Mr. Incanella's wife, Michelle Incanella, testified that she had known her husband for twenty-four years, since she was fourteen years old. At the time of her husband's death, they had been married for sixteen years and had one son, Eric, who was nine years old and enjoyed a close relationship with his father. Indeed, Mrs. Incanella related that Mr. Incanella was a devoted husband

and father and that the year since his death had been extremely difficult for both her and her son. Mrs. Incanella noted that, at her husband's death, "the root of . . . [Eric's] security . . . [was] stripped away" and that Eric's subsequent struggles in school were only one manifestation of his loss. Mrs. Incanella was herself unable to drive past the location of the accident and, therefore, no longer visited certain friends who lived in the surrounding area. She concluded that she had difficulty comprehending her husband's death and felt as if she were living in a nightmare.

Among others, Brenda Vonzellen, a friend of Mr. Incanella, expressed her anger at the appellant's offense. She cited several statistics that she had retrieved from a Mothers Against Drunk Driving (MADD) website on the Internet. Ms. Vonzellen asserted that, nationwide, drunk drivers kill "the equivalent of two plane-loads" of people every week. She further noted that, in Tennessee, forty-one percent (41%) of all traffic accidents are related to the consumption of alcohol.

At the conclusion of the sentencing hearing, the trial court imposed a sentence of eleven years incarceration in the Tennessee Department of Correction. The trial court based its sentencing determination upon the application of two enhancement factors: (2) [t]he defendant was the leader in the commission of an offense involving two (2) or more criminal actors; and (6) the amount of property damage sustained by the victim was particularly great. Tenn. Code Ann. § 40-35-114 (1997). The court noted that, due to the length of the appellant's sentence, he was not eligible for probation. Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, the court noted that the appellant was not an appropriate candidate for probation, as confinement was necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B) (1997). Specifically, the court emphasized the appellant's status as a reserve police officer at the time of this offense. Citing Ms. Vonzellen's testimony, the court also observed that the confinement of the appellant was necessary to deter others from driving under the influence of alcohol. Id.

## II. Analysis

In this appeal, the appellant is challenging the length and manner of service of his sentence. Appellate review of the length and manner of service of a sentence is de novo. Tenn. Code. Ann. § 40-35-401(d) (1997). However, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determination a presumption of correctness. Id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is upon the appellant to demonstrate the impropriety of his sentence. Tenn. Code. Ann. § 40-35-401, Sentencing Commission Comments. Because we conclude that the trial court in this case erroneously failed to consider applicable mitigating factors, we do not accord its determination the presumption. But see State v. Ware, No. 02C01-9508-CR-00228, 1997 WL 30346, at *6 n. 2 (Tenn.Crim.App. at Jackson, January 28, 1997). In any event, we consider the following factors in reviewing the trial court's determination: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in his own behalf; and (7) the potential for rehabilitation or

treatment. Tenn. Code. Ann. § 40-35-102 and -103 (1997), -210 (1998 Supp.). See also Ashby, 823 S.W.2d at 168.

### a.  The Length of the Sentence

The offense of vehicular homicide as the proximate result of the driver's intoxication is a class B felony. Tenn. Code Ann. § 39-13-213 (b) (1997). At the sentencing hearing, the appellant did not dispute his status as a Range I offender. Accordingly, he was subject to a sentence of "not less than eight (8) nor more that twelve (12) years" incarceration. Tenn. Code Ann. § 40-35-112(a)(2) (1997). The statutorily prescribed procedure for determining the appropriate length of a felony sentence within the applicable range is set forth in Tenn. Code Ann. § 40-35-210. According to this statute, the presumptive sentence in this case was eight (8) years incarceration. Id. at (c). However, if there were enhancement factors and no mitigating factors, then the court could impose a sentence above the minimum in the range. Id. at (d). If there were both enhancement and mitigating factors, the court was required to start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for mitigating factors. Id. at (e). Assigning the appropriate weight to applicable factors was within the discretion of the trial court when "'balancing the relative degrees of culpability within the totality of the circumstances of the case involved.'" State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)(citation omitted).

As noted earlier, in imposing a sentence of eleven years incarceration, the trial court considered the appellant's role as a leader in the commission of an offense involving two criminal actors and the amount of property damage sustained by the victim. Tenn. Code Ann. § 40-35-114(2) and (6). The appellant now challenges the trial court's consideration of these factors. Moreover, the appellant asserts that the following mitigating factors are applicable in his case: (11) the appellant committed the vehicular homicide under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct; and (13) the appellant has no criminal record, has financially supported his family throughout his adulthood, and has expressed remorse for his offense. Tenn. Code Ann. § 40-35-113 (1997). Finally, the appellant argues that, because there were mitigating factors and no enhancement factors and because he lacks any prior felony convictions, he was eligible for sentencing as an especially mitigated offender. Tenn. Code Ann. § 40-35-109(a) (1997).

Initially, the appellant was not eligible for sentencing as an especially mitigated offender because the record supports the application of enhancement factors to the appellant's conviction of vehicular homicide. In this regard, we conclude that the trial court properly applied enhancement factor (2), that the appellant was the leader in the commission of an offense involving two or more actors. Tenn. Code Ann. § 40-35-114. The appellant argues that his offense did not involve two criminal actors because Ms. Bassham was merely a passenger in the vehicle that the appellant was driving, and the ownership of the vehicle "remain[s] a mystery as far as the record reveals." We acknowledge that the State carries the burden of proving facts relevant to sentencing by a preponderance of the evidence. State v. Winfield, No. E1996-00012-SC-R11-CD, 2000 WL 793948, at *3 (Tenn. at Knoxville, June 20, 2000); State v. Carico, 968 S.W.2d 280, 287 (Tenn.

1998); State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995). However, at the beginning of the sentencing hearing, the court asked the prosecutor to reiterate the factual basis of the appellant's plea. Accordingly, the prosecutor related the circumstances of the appellant's offense, including statements to the police made by both the appellant and Ms. Bassham. These statements included a statement by the appellant that, at the time of the instant offense, he was driving Ms. Bassham's car. The trial court then inquired whether defense counsel disputed the accuracy of the prosecutor's account or wished to proffer any objection to the account. Defense counsel noted that Ms. Bassham's statements to the police would likely have been inadmissible at the appellant's trial but otherwise conceded the accuracy of the prosecutor's account for purposes of sentencing.

In sum, the undisputed factual basis of the appellant's plea adequately, albeit circumstantially, supports the trial court's finding that Ms. Bassham was a participant in the appellant's offense. See, e.g., State v. Williamson, 919 S.W.2d 69, 75-77 (Tenn. Crim. App. 1995)(when the evidence showed that the defendant allowed her intoxicated friend to drive her vehicle and that her friend subsequently drove into an opposing lane of traffic and collided with another vehicle killing the driver's unborn fetus, the defendant was criminally responsible for vehicular homicide). Indeed, Ms. Bassham was indicted along with the appellant by a Williamson County Grand Jury for the offense of vehicular homicide, and the trial in her case was pending at the time of the appellant's sentencing hearing. Accordingly, the trial court could conclude that the appellant was a leader in the commission of the offense. Cf. State v. Stewart, No. 03C01-9106-CR-00158, 1992 WL 46833, at *3 (Tenn. Crim. App. at Knoxville, March 13, 1992)(this court held that the defendant was the leader in the commission of the offense of driving under the influence (DUI) when the evidence established that, with his brother's permission, he drove his brother's truck while intoxicated, and his brother was convicted of aiding and abetting DUI).

We note that, under Williamson, 919 S.W.2d. at 82, Ms. Bassham was also a leader in the commission of this vehicular homicide. However, the application of Tenn. Code Ann. § 40-35-114(2) does not require that the appellant be the sole leader. State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). See also State v. Williams, No. 02C01-9804-CR-00106, 1999 WL 504537, at *3 (Tenn. Crim. App. at Jackson, July 16, 1999)(there can be more than one leader in the commission of an offense); State v. Johnson, No. 02C01-9504-CC-00097, 1997 WL 80970, at *11 (Tenn. Crim. App. at Jackson, February 27, 1997)(equal participation in a crime by the two perpetrators does not, by itself, preclude the use of Tenn. Code Ann. § 40-35-114(2) to enhance a sentence); State v. Franklin, No. 03C01-9402-CR-0061, 1995 WL 567484, at *2 (Tenn. Crim. App. at Knoxville, September 27, 1995)(Tenn. Code Ann. § 40-35-114(2) may be applied even when a co-defendant is equally if not more culpable for the offenses involved).

As to the trial court's application of Tenn. Code Ann. § 40-35-114(6), concerning the amount of property damage sustained by the victim, the undisputed facts of this case indicate that Mr. Incanella was driving a 1984 Chevrolet Beretta at the time of the accident. Mrs. Incanella testified that the Chevrolet Beretta was in excellent condition. She recounted that she and her husband had purchased the vehicle shortly before their son's birth, that the vehicle had proved to be very reliable, and that the gas mileage was good. Mrs. Incanella also identified and the State

-5-

introduced into evidence photographs of the vehicle following the accident.  Mrs. Incanella confirmed that the vehicle was completely destroyed in the accident but stated that she had not replaced the vehicle.  When asked the value of the vehicle, she responded, "I don't know, a couple thousand dollars I'm sure.  Four or five thousand dollars."

The appellant argues on appeal that Mrs. Incanella's testimony and the photographs of the wrecked vehicle do not establish "particularly great" property damage, i.e., property damage "greater than that which ordinarily results from a vehicular homicide accident."  In other words, the appellant argues that a vehicular homicide would normally entail the complete destruction of a victim's vehicle.  We simply note that the offense of vehicular homicide does not require that the victim be driving a vehicle or that a victim be a passenger in a vehicle. Tenn. Code Ann. § 39-13-213. Moreover, this court has previously held that similar damage to a victim's property will support the application of the disputed factor to enhance a sentence for vehicular homicide. See, e.g., State v. Kelly, No. 01C01-9610-CC-0048, 1998 WL 712268, at *12 (Tenn. Crim. App. at Nashville, October 13, 1998)(Tenn. Code Ann. § 40-35-114(6) was applicable to enhance sentences for vehicular homicide and vehicular assault when the victims' vehicle, valuing six thousand dollars, was destroyed); State v. Trahan, No. 01C01-9408-CR-00276, 1995 WL 293093, at *3 (Tenn. Crim. App. at Nashville, May 15, 1995)(factor (6) was applicable to a conviction of vehicular homicide when the victim's vehicle was a total loss and it's value was approximately five thousand dollars ($5,000)). Cf. State v. Neblett, No. 01C01-9805-CC-00231, 1999 WL 743633, at *3 (Tenn. Crim. App. at Nashville, September 24, 1999), perm. to appeal denied, (Tenn. 2000)(factor (6) was applicable to enhance a sentence for vehicular assault because the victim's car, valued at approximately eight thousand dollars ($8,000), was totaled as a result of the accident with the defendant); State v. Robinson, No. 02C01-9505-CC-00126, 1996 WL 89419, at *3 (Tenn. Crim. App. at Jackson, February 29, 1996)(factor (6) was applicable to a vehicular assault conviction when the victim's car, worth approximately three thousand dollars ($3,000), was totally destroyed).

Significantly, the appellant did not dispute the accuracy of Mrs. Incanella's valuation of her husband's vehicle at the sentencing hearing and does not dispute her valuation now.  At the sentencing hearing, following the presentation of proof and during argument, defense counsel did question Mrs. Incanella's qualification to testify concerning the value of her husband's vehicle but conceded that he had not made a timely objection, explaining that he had refrained from objecting due to his respect for Mrs. Incanella.  Be that as it may, ""[w]hen a party does not object to the admissibility of evidence, . . . the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary . . . .'" State v. Smith, No. W1998-00156-SC-R11-CD, 2000 WL 872830, at *4 (Tenn. at Jackson, June 30, 2000)(publication pending); Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 36(a). See also State v. Wright, No. 03C01-9203-CR-00087, 1992 WL 386323, at *2 (Tenn. Crim. App. at Knoxville, December 29, 1992)(when defendant failed to object to testimony of non-owners concerning the value of property, non-owners' testimony was proper proof, and the State carried its burden).

In any event, under Tenn. R. Evid. 701(b), a witness may testify to the value of the witness' own property.  It is unclear from the record whether Mrs. Incanella was the title owner of

the property.  State v. Bridgeworth, 836 S.W.2d 591, 593 (Tenn. Crim. App. 1992).  Nevertheless, in State v. Holt, 965 S.W.2d 496, 498 (Tenn. Crim. App. 1997), this court held that a witness who was married to the title owner of a vehicle and who had intimate knowledge of the car was qualified to give a lay opinion as to the value of the car.  Of course,

> [t]he owner's evaluation is not conclusive proof.  It is to be given appropriate weight considering the circumstances of the case. . . . An owner's testimony based upon pure speculation will be given little or no weight.

NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 701.6, at 454-455 (Michie ed., 3rd ed. 1995)(citing Airline Construction, Inc., v. Barr, 807 S.W.2d 247, 256 (Tenn. App. 1990)).  That having been said, in light of Mrs. Incanella's testimony concerning the condition and reliability of the vehicle and the evidence of its complete destruction, we decline to disturb the trial court's application of this factor.

We additionally note the applicability of yet another enhancement factor, that the appellant had no hesitation about committing a crime when the risk to human life was high.  Tenn. Code Ann. § 40-35-114(10).  A trial court cannot enhance a defendant's sentence using a factor that is an essential element of the offense.  Tenn. Code Ann. § 40-35-114.  Factor (10), as it relates to the death of the victim, is inherent in every homicide case.  State v. Kelley, No. E1999-00557-CCA-MR3-CD, 2000 WL 224358, at *8 (Tenn. Crim. App. at Knoxville, February 28, 2000).  Nevertheless, the trial court may consider this factor when a defendant endangers the lives of people other than the victim.  State v. Zonge, 973 S.W.2d 250, 259 (Tenn.Crim.App. 1997); State v. Bingham, 910 S.W.2d 448, 452-453 (Tenn. Crim. App. 1995); Kelley, No. E1999-00557-CCA-MR3-CD, 2000 WL 224358, at *8; State v. Snyder, No. 01C01-9705-CR-00176, 1998 WL 352094, *4 (Tenn.Crim.App. at Nashville, July 2, 1998).  In this case, the appellant indisputably endangered the life of his passenger, Ms. Bassham.

As to the mitigating factors asserted by the appellant, we conclude that the trial court properly declined to consider Tenn. Code Ann. § 40-35-113(11) in this case.  This provision mitigates an offense when "[t]he defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct."  Id.  In a homicide case, "[t]he central point for . . . consideration under this factor is whether a 'sustained intent to violate the law motivated [the defendant's] conduct' that culminated in the homicide."  State v. Russell, No. 03C01-9608-CR-00319, 1997 WL 573475, at *6 (Tenn. Crim. App. at Knoxville, September 16, 1997).  In other words, in determining the applicability of this factor to a homicide conviction, a court must first identify the defendant's "'conduct' that culminated in the homicide" and then determine whether a sustained intent to violate the law motivated that conduct.  Id. (identifying the relevant conduct as a barroom brawl and applying factor (11) to the defendant's conviction of reckless homicide).

In State v. Osborne, No. 01C01-9806-CC-00246, 1999 WL 298220, at *1 (Tenn. Crim. App. at Nashville, May 12, 1999), a case closely analogous to the instant case, a defendant drove through the town of Linden, Tennessee, at an excessive rate of speed, ultimately running a red

light. As he drove through the intersection, the defendant was forced to swerve in order to avoid a second vehicle and collided with a third vehicle, killing two of the passengers in the third vehicle. Id. In that case, this court defined the "'conduct' that culminated in the homicide[s]" as the defendant's violation of the traffic laws. Id. at *4. Noting that the defendant possessed a "sustained intent" to violate the traffic laws, this court affirmed the trial court's application of factor (11) to the defendant's convictions of criminally negligent homicide. Id. As in the instant case, there was no evidence of any prior criminal activity by the defendant. Id. at *5.

In this case, the "'conduct' that culminated in the homicide" was the appellant's driving under the influence of alcohol, and the record reflects that the appellant and his companion planned this evening of drinking and driving. As noted earlier, according to the undisputed factual basis of the appellant's plea, the appellant purchased beer as he was driving with Ms. Bassham to the Music City Mix Factory on the evening of September 26, 1998, and both he and Ms. Bassham consumed three or four bottles of beer in Ms. Bassham's car. At the Music City Mix Factory, the appellant continued to drink. Moreover, the State's proof suggests that, upon leaving the club, the appellant and Ms. Bassham carried drinks to the car. The appellant then resumed his position behind the wheel of Ms. Bassham's car, and the tragic events of this case ensued.[1]

As to the remaining mitigating factors proposed by the appellant pursuant to Tenn. Code Ann. § 40-35-113(13), this court has previously hesitated to afford significant weight to a defendant's lack of a prior criminal record and his stable work history, stating that "every citizen is expected to refrain from committing any type of crime . . . [and] is expected to have a stable work history if the economy permits the citizen to work, the citizen is not disabled, or the citizen is not independently wealthy." State v. Turner, No. 03C01-9805-CR-00176, 1999 WL 817690, at *16 (Tenn. Crim. App. at Knoxville, October 6, 1999), perm. to appeal denied, (Tenn. 2000). See also State v. Keel, 882 S.W.2d 410, 422-423 (Tenn. Crim. App. 1994). One might similarly observe that, assuming stable employment, every citizen is expected to financially support his or her children. But see State v. Claybrooks, 910 S.W.2d 868, 873 (Tenn.Crim.App. 1994). More recently, however, in State v. Gutierrez, 5 S.W.3d 641, 646-64 (Tenn. 1999), our supreme court explicitly approved the consideration of a defendant's lack of a criminal history and, generally, his standing in the community in mitigating a defendant's sentence. Thus, in Kelley, No. E1999-00557-CCA-MR3-CD, 2000 WL 224358, at *11, we observed that, "relative to sentencing, an individual's past essentially

---

[1] The appellant cites State v. Miles, No. 03C01-9812-CR-00447, 1999 WL 1191535 (Tenn. Crim. App. at Knoxville, December 16, 1999), in support of his proposition that Tenn. Code Ann. § 40-35-113(11) was applicable in his case. In Miles, the defendant shot her boyfriend with a shotgun. She subsequently claimed to police that her boyfriend had told her that the gun was unloaded, whereupon she had jokingly pointed the gun at her boyfriend and pulled the trigger. Both the defendant and her boyfriend had been drinking. The defendant pled nolo contendere to voluntary manslaughter. At the defendant's sentencing hearing, a detective testified that he believed the defendant's statement that the killing was an accident. In upholding the trial court's consideration of factor (11), this court noted that the testimony of the detective was persuasive, and concluded that the appellant did not possess a sustained intent to violate the law. Id. at *8. Miles is readily distinguishable from the instant case because, while the conduct underlying the homicide, i.e., playing with the shotgun, certainly reflected abysmal judgment, the conduct did not reflect a "sustained intent" to violate any law. Again, in this case, the conduct underlying the homicide, i.e., an evening of drinking and driving, reflected such an intent.

stands as a witness either for or against him or her." Accordingly, the appellant was entitled to some consideration of his admittedly exemplary past.

A defendant's remorse is also an appropriate consideration under Tenn. Code Ann. § 40-35-113(13) in determining the length of his sentence. State v. Grissom, 956 S.W.2d 514, 518 (Tenn.Crim.App. 1997); State v. Leggs, 955 S.W.2d 845, 852 (Tenn.Crim.App. 1997). However, we have held that "a sentencing court is not required to consider the defendant's remorse as a mitigation factor . . . [t]herefore, failure to apply such a mitigator to reduce the defendant's sentence cannot be considered an error." State v. Emert, No. 03C01-9802-CC-00074, 1999 WL 512029, at *4 (Tenn.Crim.App. at Knoxville, July 21, 1999). Nevertheless, in conducting our de novo review, we afford some weight to this factor.

In the case of error, this court may modify the appellant's sentence. Tenn. Code Ann. § 40-35-401(c)(2). In modifying the appellant's sentence, we proceed with our analysis according to Tenn. Code Ann. § 40-35-210(e). Applying Tenn. Code Ann. 40-35-210(e), we agree with the trial court that, under all the circumstances of this case, the applicable enhancement factors raise the appellant's sentence from a minimum term of eight years incarceration to a term of eleven years incarceration. Tenn. Code Ann. § 40-35-114(2), (6), and (10). However, as noted above, the appellant's exemplary past and his remorse are appropriate mitigating factors warranting some reduction of his sentence. Therefore, we reduce the appellant's sentence to a period of nine years incarceration in the Tennessee Department of Correction. Id. The length of the appellant's sentence precludes his eligibility for probation. Tenn. Code Ann. § 40-35-303(a).

### III.  Conclusion

For the foregoing reasons, we modify the judgment of the trial court to reflect a sentence of nine years incarceration in the Tennessee Department of Correction.

_____
NORMA McGEE OGLE, JUDGE