**STATE of Tennessee, Appellee,**

v.

**Jeff CARTER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 27, 1995.

Permission to Appeal Denied by Supreme Court Aug. 28, 1995.

John H. Henderson, District Public Defender, Franklin, for Appellant.

Charles W. Burson, Attorney General, Nashville, Charlette Reed Chambers, Criminal Justice Division, Nashville, Joseph D. Baugh, District Attorney General, Franklin, for Appellee.

## OPINION

WADE, Judge.

The defendant, Jeff Carter, entered guilty pleas to especially aggravated kidnapping and aggravated robbery.[1] The trial court imposed concurrent, Range I sentences of twenty-three (23) years for the especially aggravated kidnapping and eleven (11) years for the aggravated robbery. In this appeal, the single issue presented for review is whether the sentences were excessive.

We affirm the judgment of the trial court.

The victim, Patricia West, testified briefly at the sentencing hearing. The state also introduced the transcript of a related aggravated rape charge which had ended in a

mistrial. There is little dispute about either the kidnapping or the robbery.

In January of 1993, the victim, a manager for a Shoney's Restaurant in Nashville, loaned $20.00 to a friend, Keith Puckett. Puckett watched as the victim took the bill from her shoe. The shoe contained about $1,300.00 in cash which the victim had just received as a tax refund. Later that same day, Puckett called back to ask for more money. Although the victim still had all of the cash, she told Puckett that she had taken most of her money home but could loan him another $15.00 or so. Thereafter, Puckett arrived accompanied by two men, one short and stocky and the other tall and thin, neither of whom were known to the victim. Puckett offered the victim a ride home and she accepted.

Within minutes after getting into the car, the tall, thin man, who the victim later identified as the defendant, asked Puckett about money that Puckett owed him. The defendant then pushed the victim's head down, pulled her coat over her, and said, "Bitch, don't say anything." The victim's nose started to bleed but the men laughed when she asked for a tissue. The defendant held something that felt like metal against the back of the victim's head. Based upon conversations among the men, the victim surmised they might have both a sawed-off shotgun and a pistol.

After a short time, the car was driven to a convenience market where the men took $10.00 from the victim for gas. Ten or fifteen minutes later, the car was stopped along a country road. As the victim was ordered out of the car, she hid her money inside her mouth. When she was directed to take off her shoes, the victim realized that Puckett had told the other two men about her cash. Because the men were unable to find the money in her shoes, the victim was ordered to remove her clothes. Still unable to locate the cash, they then searched the interior of the car.

---

1. The defendant was also indicted for aiding and abetting the aggravated rape of the victim. Following his guilty pleas on these counts, the defendant's aggravated rape charge ended in a mistrial due to a hung jury. Keith Puckett and Richard Brown were charged on all three counts but had not been tried at the time of the defendant's sentencing hearing.

As Puckett and the shorter man got back into the car, the defendant, who appeared to be carrying a gun covered with some clothing, forced the victim behind the vehicle and raped her. The three men then departed, leaving the victim in the cold and without clothes other than a sports bra. At that point, the victim ran to a nearby house where she received assistance.

The defendant admitted that he was guilty of both especially aggravated kidnapping and aggravated robbery. During the course of the proceedings that ended in the mistrial, however, he denied any involvement in the rape. He stated that he had held a screwdriver inside a sweater in an attempt to convince the victim he had a weapon. He said that Richard Brown, the third assailant, had a pistol and was alone with the victim for a period of about five minutes.

We are guided in our review of the propriety of the sentence by the Criminal Sentencing Reform Act of 1989. The Act provides that when a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

■ Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210.

■ The presumptive sentence is the minimum in the range if there are no enhancement and mitigating factors. Tenn.Code Ann. § 40–35–210(c). Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors, then reduce the sentence based upon any appropriate mitigating factors. Tenn.Code Ann. § 40–35–210(e). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. *See* *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). The trial court, however, should make specific findings on the record which indicate its application of the sentencing principles. Tenn.Code Ann. §§ 40–35–209 and –210.

■ At the sentencing hearing, the trial court found two enhancement factors: that the defendant had a previous history of criminal convictions or behavior in addition to that necessary to establish his sentencing range and that the defendant allowed the victim to be treated with exceptional cruelty during the commission of the offense. Tenn. Code Ann. § 40–35–114(1) and (5). The trial court also found that the defendant was entitled to some mitigation because he had released the victim alive. Tenn.Code Ann. § 39–13–305(b)(2).

The trial court imposed the sentences after the declaration of the mistrial on the rape charge. It found that the victim had been treated with exceptional cruelty because she had been left naked, in a remote area, and in sub-freezing temperatures; it ruled that the evidence of the rape, while apparently not enough to convict, sufficiently implicated the defendant to also serve as "exceptional cruelty." The 23–year sentence was in the upper part of the 15 to 25 years permissible for a Range I, Class A felony. Tenn.Code Ann. § 40–35–112(a)(1). The 11–year sentence was in the upper portion of the possible eight to twelve years for a Class B felony. Tenn. Code Ann. § 40–35–112(a)(2). In this appeal, the defendant acknowledges the applicability of each of the two enhancement factors. While conceding that the victim had been treated with exceptional cruelty when she had been left naked in freezing weather, the defendant challenges the trial court's alternate basis for the application of the "exceptional cruelty" factor. The defendant contends that the trial court should not have

made such a finding absent a verdict of guilt on the rape charge.

In our view, the record clearly supports the findings of exceptional cruelty. The victim testified at the sentencing hearing that the defendant had raped her. The trial court found by a preponderance of the evidence that the defendant had done so. *See State v. Richard J. Crossman,* No. 01C01–9311–CR–00394, slip op. at 9, 1994 WL 548712 (Tenn. Crim.App., at Nashville, October 6, 1994), (although not specified in the 1989 Sentencing Reform Act, the preponderance of the evidence standard should apply to any factual determination necessary for sentencing within a range), *perm. to appeal denied,* (Tenn. 1995). Even if the victim had been mistaken in her testimony, the defendant had nonetheless allowed the act to occur. Because the defendant had also permitted the victim to be abandoned in such a remote area, the trial court was entitled to give considerable weight to this particular enhancement factor.

█ Next, the defendant claims that his youth should have been applied as a mitigating factor. *See* Tenn.Code Ann. § 40–35–113(6). He asserts that the trial court placed undue emphasis on his juvenile record in applying the prior criminal history enhancement factor. We disagree. In *State v. Adams,* 864 S.W.2d 31, 34 (Tenn.1993), our supreme court held that a defendant's juvenile record qualifies as a prior criminal history. *See* Tenn.Code Ann. § 40–35–114(1). Because this defendant's juvenile record dates back to 1988, includes several misdemeanor offenses, and a charge of theft over $500.00, the prior criminal record enhancement factor most certainly applied. In determining whether the sentence should have been mitigated because the defendant lacked substantial judgment because of his youth, "courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." *Adams,* 864 S.W.2d at 33.

At the time of the sentencing, the defendant was 18 years old and in good mental and physical health. Although he had dropped out of school in the tenth grade, he had worked in the Job Corps program in Knoxville for over six months. And, while the defendant had a reading comprehension of the twelfth grade, he neither worked nor went to school during the eight months or so which elapsed before the commission of these crimes. During that period, a number of entries were made on his juvenile record. Two days after these offenses, the defendant and his two companions were arrested in Iowa, Louisiana, for theft of gasoline and possession of a stolen vehicle.

From all of these facts, we think the trial court acted within its prerogative in determining that the defendant was sufficiently mature to understand the nature of his conduct. His familiarity with the criminal justice system, his several opportunities at rehabilitation before reaching the age of majority, and his active role in these planned crimes indicate a full appreciation for the seriousness of his acts. It is difficult under these circumstances to conclude that because of his youth, the defendant lacked "substantial judgment."

█ While the sentences of 23 and 11 years are in the higher range, the trial court is entitled to the presumption of correctness when it begins with the minimum sentence, accurately identifies the enhancement factors, and gives weight to those factors based upon circumstances substantiated by the record. Here, it followed the correct procedure.

Thus, the judgment is affirmed.

SUMMERS and WELLES, JJ., concur.