IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. SIMON CHUEL MAKUACH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2502     Steve R. Dozier, Judge**

---

**No. M1999-01399-CCA-R3-CD - Decided June 2, 2000**

---

Defendant appeals his sentence imposed after a Davidson County jury found him guilty of voluntary manslaughter, a Class C felony. He was sentenced as a Range I standard offender to five years confinement. Defendant challenges (1) the length of his sentence, and (2) the denial of his request for alternative sentencing. Upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

RILEY, J., delivered the opinion of the court, in which WADE, P. J. and OGLE, J. joined.

Karl Dean, District Public Defender; Jeffrey A. DeVasher (on appeal), Laura C. Dykes and Gary C. Tamkin (at trial), Assistant Public Defenders, for the appellant, Simon Chuel Makuach.

Paul G. Summers, Attorney General and Reporter; Tonya Miner, Assistant Attorney General; Victor S. Johnson III, District Attorney General; Derrick L. Scretchen and Jon P. Seaborg, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The victim and the defendant were cousins who immigrated to the United States from Sudan, Africa. At the time of his death, the victim was living in an apartment complex in Nashville with the defendant. Both men believed the victim had contracted the HIV virus associated with acquired immune deficiency syndrome (AIDS). On July 24, 1998, an altercation arose between the two men, and the defendant beat the victim to death.

While on a routine patrol, the complex's security officer was contacted by the defendant's neighbor, who stated she had heard the victim and the defendant screaming and "banging around" for approximately thirty minutes. She also stated that she heard a woman and a child crying and screaming. The security guard testified that when she initially approached the apartment, the defendant stated everything was fine and attempted to close the door. When she tried to open the door, something was blocking it and she again asked the defendant what was going on inside. At that point the defendant told her that his cousin was dead. She notified authorities, and the defendant was arrested and subsequently indicted for second degree murder.

The defendant testified that the victim was trying to kill himself. He stated that he was outside the apartment and when he returned, the victim had a knife and was bleeding from the mouth. Defendant further stated that he attempted to take the knife from the victim, and the victim cut him on the lip and "spit" blood at him. He claims that he was concerned about contracting HIV from the victim. Defendant testified that he pushed the victim and they both fell to the floor, and the victim hit his head on the door knob. He contends the victim was bleeding profusely. Therefore, he covered the victim with a sheet to stop the bleeding and also to shield the body from the view of defendant's children.

The medical examiner testified that the victim suffered at least twenty to twenty-four blunt force blows. He stated he believed the majority of the blows were inflicted with either a "hammer-like object" or a boot or shoe. The testimony revealed that the victim suffered massive injuries. In addition to multiple contusions and lacerations, eleven of the victim's ribs were fractured causing internal injuries to his heart, lungs, liver and spleen. The medical examiner testified that the victim's internal injuries were consistent with a heavy object falling on him while he was lying on his back. Furthermore, the victim's larynx was fractured. The medical examiner explained that this injury is very rare since it takes a considerable amount of force. He stated that he believed this injury was accomplished by stomping on the victim's neck while he was lying on the ground.

Officers testified that a broken hammer was found at the scene. A technician from the crime lab testified that there was human blood on the hammer. However, police never recovered a knife like the one the defendant described.

The jury found the defendant guilty of voluntary manslaughter. The defendant was subsequently sentenced as a Range I standard offender to five years. In this appeal as of right, defendant challenges the length and manner of service of the sentence.

## STANDARD OF REVIEW

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

## ANALYSIS

## A. Length of Sentence

Defendant asserts his five-year sentence of confinement is excessive. Although defendant does not challenge the application of the exceptional cruelty enhancement factor (Tenn. Code Ann. § 40-35-114(5)), he claims the trial court erroneously found he had a prior history of criminal convictions (Tenn. Code Ann. § 40-35-114 (1)). In addition, he argues the trial court should have found that substantial grounds existed which would tend to excuse his conduct. *See* Tenn. Code Ann. § 40-35-113(3).

Once the trial court determines enhancement and mitigating factors exist, it should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

First, the defendant argues the trial court erred in finding he had a previous history of criminal convictions beyond that necessary to establish the range. *See* Tenn. Code Ann. § 40-35-114(1). He claims that his three misdemeanor convictions do not constitute a previous history of criminal convictions or criminal behavior.

We find the trial court appropriately considered the defendant's history of criminal convictions. The defendant had prior convictions for possession of a weapon, assault, and driving on a suspended license. While these offenses are misdemeanors, they may still be considered by the trial court. State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995); State v. Fred Edmond Dean, C.C.A. No. 03C01-9508-CC-00251, Sullivan County (Tenn. Crim. App. filed January 10, 1997, at Knoxville); State v. Jerome Dixon, C.C.A. No. 02C01-9508-CC-00247, Hardin County (Tenn. Crim. App. filed July 26, 1996, at Jackson). Furthermore, the trial court noted that the present offense was also an assault-type offense. Therefore, it appropriately accorded this factor considerable weight.

Second, the defendant claims the trial court erred in failing to find there were substantial grounds tending to excuse his conduct. *See* Tenn. Code Ann. § 40-35-113(3). He argues that his belief that the victim had HIV and was wielding a knife were sufficient grounds to excuse his conduct.

The trial court found that the defendant's actions went far beyond that which might reasonably be deemed justifiable. The trial court stated that in making this determination it relied heavily on the medical examiner's testimony. At trial the medical examiner testified that the victim was subjected to at least twenty to twenty-four blunt force blows. He stated that all but one of the victim's ribs were fractured as well as the victim's larynx. The autopsy revealed tears and bruises

on the victim's heart, lungs, spleen and liver. In addition the victim had multiple external lacerations and contusions. We conclude the trial court did not err in refusing to apply this mitigating factor.

The trial court found two statutory enhancement factors and one mitigating factor. The weight to apply to each factor is left to the sound discretion of the trial court. Moss, 727 S.W.2d at 238. The defendant was appropriately sentenced within the applicable range, and we find no reason to disturb the length of the sentence.

## B. Alternative Sentencing

The defendant argues he should have been granted some form of alternative sentencing. He asserts that since he was convicted of a Class C felony, he is presumed to be a candidate for alternative sentencing and the record does not preponderate against that presumption.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also* Ashby, 823 S.W.2d at 169. Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

The trial court found that the nature and extent of the victim's wounds were both shocking and excessive. *See* State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995). Thus, the trial court held that confinement was necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B). Once again, the court noted that the victim suffered a thirty minute beating in which he was struck some twenty to twenty-four times, causing massive injuries.

In addition the trial court considered the defendant's credibility in relation to his potential for rehabilitation. In making its evaluation the trial court stated,

> I'm not sure that Mr. Makuach has told the complete and entire truthful version of what occurred out there that particular night. ...[H]e didn't tell the police all that happened initially. ...But, even the trial testimony... I'm not sure, based on the medical testimony, that you're gonna have this amount of injuries, ... from two blows and a fall against the door.

This court has found that in determining a defendant's suitability for alternative sentencing, the trial court may properly consider credibility, remorse, and candor as they reflect upon potential for rehabilitation. *See* Tenn. Code Ann. § 40-35-103(5); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). In the instant case, the defendant continued to deny striking the victim with the hammer. While he admitted to striking and kicking the victim, he testified that he inflicted only three blows. This is completely inconsistent with the testimony of the medical examiner.

Furthermore, as previously discussed, the defendant had a prior criminal history which included a conviction for assault. As the trial court noted, the present offense is an assault which resulted in a homicide.

Therefore, considering the seriousness of the offense, the defendant's lack of credibility and remorse, and his past criminal behavior, we find that alternative sentencing was properly denied.

## CONCLUSION

Upon a thorough review of the record, we conclude the trial court properly considered the principles of sentencing and all relevant facts and circumstances. Thus, the judgment of the trial court is AFFIRMED.