IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2000 Session

## STATE OF TENNESSEE v. AMELIA KAY STEM

**Appeal as of Right from the Circuit Court for Lawrence County**
**No. 20727      Stella L. Hargrove, Judge**

---

**No. M2000-00600-CCA-R3-CD - Filed December 29, 2000**

---

The appellant, Amelia Kay Stem, entered a plea of nolo contendere in the Lawrence County Circuit Court to one count of second degree murder. The trial court sentenced the appellant to twenty-five years incarceration in the Tennessee Department of Correction. The appellant raises the following issue(s) for our review: whether the trial court erred in sentencing the appellant by incorrectly applying enhancement factors, by failing to apply mitigating factors, and by neglecting to make specific findings of fact on the record. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ROBERT W. WEDEMEYER, JJ., joined.

J. Daniel Freemon, Lawrenceburg, Tennessee, for the appellant, Amelia Kay Stem.

Paul G. Summers, Attorney General and Reporter, David H. Findley, Assistant Attorney General, Robert C. Sanders and James G. White, II, Assistant District Attorneys General, and T. Michael Bottoms, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On the afternoon of October 12, 1998, the appellant, Amelia Kay Stem, met with co-defendants, Jeremy Kyle Massey and Nathan Mork Miller, and told them that the victim, her husband, Jeffery Stem, had kicked her out of the house. At that time, the appellant was two months shy of her eighteenth birthday and had been married to the victim for two years. The victim had previously been abusive toward the appellant. The three concocted a plan to murder the victim. The appellant was to go home, act normally, and entice the victim to go to bed with her. The appellant was to leave the back door of the residence unlocked so that Miller and Massey could enter the house. After the victim went to bed, the two men planned to enter the house, surprise the victim, and

kill him. Miller and Massey went to Wal-Mart and obtained masks and gloves to wear during the murder.

As planned, the appellant left the back door of the residence unlocked. However, the victim, who was in bed, heard noises as the two men entered the house. The victim grabbed a stick that he kept nearby for protection and began fighting with Miller and Massey. Miller and Massey both had knives and they repeatedly stabbed the victim. The two men also stomped the victim on the head and neck. Miller stated that he stuck his knife into the victim and twisted it. The appellant stood in the hallway and watched the murder. Additionally, the appellant's two-month-old child was in his crib in the bedroom of the residence during the murder.

After the murder, the appellant removed a ring from the victim's finger and also took a telephone from the house to create the appearance that the victim had been killed during a robbery. Next, the appellant took her two-month-old son from his crib and accompanied Miller and Massey to a pond behind Massey's father's house where they washed the blood from their bodies. Miller and Massey burned their bloody clothing. The trio then returned to the scene of the crime to retrieve Miller's mask. The appellant helped Miller to retrieve the mask and also got her purse and keys. The trio left the appellant's residence and went to an automatic teller machine where the appellant withdrew $200 and gave the money to Massey and Miller. The appellant and Massey dropped Miller off at Jackson Street. The appellant, her baby, and Massey proceeded to a motel room where they spent the rest of the night. They planned for the appellant to go home in the morning, "discover" the body, and then call the police.

At 8:00 a.m. on October 13, 1998, the appellant returned home. She called 911 and claimed to have just discovered her husband's body, lifeless and covered in blood, on the living room floor. The police proceeded to the location to investigate. Shortly thereafter, the police took the appellant to the police station so that she could give her statement as a witness. The appellant claimed that she did not know who killed her husband. Additionally, the appellant told the police that Massey and Miller would not have killed the victim but two other individuals might have. The police interviewed Massey and Miller. As a result of their statements, the police quickly determined that the appellant was involved in the murder. The appellant subsequently gave another statement to the police, this time as a suspect. She admitted that Massey and Miller had killed the victim, but denied any involvement in or prior knowledge of the murder. However, Massey and Miller's statements indicated that the appellant had participated in the planning and execution of the murder. Subsequently, the appellant was charged with first degree murder.

The appellant entered a plea of nolo contendere in the Lawrence County Circuit Court to one count of second degree murder. The trial court sentenced the appellant to twenty-five years incarceration in the Tennessee Department of Correction. On appeal, the appellant raises the following issue(s) for our review: whether the trial court erred in sentencing the appellant by incorrectly applying enhancement factors, by failing to apply mitigating factors, and by neglecting to make specific findings of fact on the record.

## II.  Analysis

Appellate review of the length of a sentence is de novo.  Tenn. Code Ann. § 40-35-401(d) (1997). Moreover, if the trial court correctly considered sentencing principles and all relevant facts and circumstances, our review will be de novo with a presumption of correctness.  Id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Furthermore, the appellant bears the burden of demonstrating the incorrectness of her sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

This court considers the following factors in conducting its de novo review: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in her own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102,-103,-210 (1997). See also Ashby, 823 S.W.2d at 168.

Because second degree murder is a class A felony, the starting point in determining the appellant's sentence is the midpoint of the applicable range.  Tenn. Code Ann. § 40-35-210(c).  Additionally, because the appellant is a Range I offender, the range is from fifteen to twenty-five years incarceration.  Tenn. Code Ann. § 40-35-112(a)(1)(1997).  Accordingly, the trial court would begin at twenty years, enhancing for the enhancement factors and reducing for the mitigating factors.  Tenn. Code Ann. § 40-35-210(e).

The trial court found the presence of the following enhancement factors: (2) the appellant was a leader in the commission of an offense involving two or more criminal actors; (5) the appellant allowed the victim to be treated with exceptional cruelty during the commission of the offense; (6) the personal injuries inflicted upon the victim were particularly great; and (15) the appellant abused a position of private trust or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense.  Tenn. Code Ann. § 40-35-114 (1997). The trial court also found the presence of a single mitigating factor: the appellant aided the prosecution in resolving the murder by testifying against her co-defendants. Tenn. Code Ann. § 40-35-113(13)(1997).  The appellant alleges that the trial court incorrectly applied the enhancement factors and neglected to apply mitigating factors; therefore, the trial court incorrectly sentenced the appellant.  Because we conclude that the trial court erroneously applied one of the enhancement factors, we will review the appellant's sentence de novo without a presumption of correctness.

The trial court found that the personal injury inflicted upon the victim was particularly great.  Tenn. Code Ann. § 40-35-114(6).  The appellant argues that this enhancement factor is necessarily included within the offense of second degree murder and therefore should not have been applied in this case.  The State concedes that the trial court improperly applied this enhancement factor.  We agree that this enhancement factor is included in the offense of second degree murder and the trial court erroneously applied this factor to the appellant. See State v. Belser, 945 S.W.2d 776, 792 (Tenn. Crim. App. 1996).

Additionally, the trial court determined that the appellant was a leader in the commission of the offense. Tenn. Code Ann. § 40-35-114(2). The appellant contends that there was no proof in the record to support the trial court's application of this factor. We disagree. This court has stated that, to apply enhancement factor (2), the appellant need not be the sole leader of an offense, only a leader in an offense. State v. Ortiz, No. 01C01-9607-CC-00284, 1998 WL 155585, at *6 (Tenn. Crim. App. at Nashville, March 31, 1998). One of Massey's statements to the police suggests that on at least one occasion the appellant told Miller that she wished someone would kill the victim. Moreover, the statements of Massey and Miller indicate that the appellant was involved in planning the murder. Additionally, there is proof in the record to show that the appellant left the door unlocked to allow Miller and Massey to enter the residence, helped Miller and Massey to destroy evidence, and instituted a cover-up by making the murder appear to result from a robbery. See State v. Snyder, No. 03C01-9403-CR-00101, 1995 WL 687581, at *8 (Tenn. Crim. App. at Knoxville, November 21, 1995). We find that this is sufficient proof to warrant the application of enhancement factor (2).

The trial court also found that the appellant allowed the victim to be treated with exceptional cruelty. Tenn. Code Ann. § 40-35-114(5). The appellant claims that the record is devoid of evidence suggesting that she did so. We disagree. This court had stated that "[t]he phrase 'extreme cruelty' is defined as 'cruelty above that needed to effectuate the crime.'" State v. Griffis, 964 S.W.2d 577, 601 (Tenn. Crim. App. 1997). The autopsy report introduced by the State revealed that the victim had multiple stab wounds to his chest, a severe incision in his neck, several indications of blunt trauma to his head, a dislocated left shoulder, shoe tread marks on his right shoulder, a scalp laceration, and incisions on his left hand. Id. at 601-602. Additionally, in his statement to the police, Miller admitted, "My knife was dull. I just stuck it in him and twisted it. Instead of stabbing him I stuck it in and twisted it." See State v. Alvarado, 961 S.W.2d 136, 151 (Tenn. Crim. App. 1996). Moreover, Officer Nugent testified that the appellant admitted that she could have prevented the victim's murder. These actions were clearly cruelty above and beyond that necessary to commit the murder.

We note that this court has stated that "[w]hen applying enhancement factor (5), a trial court 'should state what actions of the [appellant], apart from the elements of the offense constituted "exceptional cruelty."'" Id. quoting State v. Goodwin, 909 S.W.2d 35, 45-46 (Tenn. Crim. App. 1995). Id. (citation omitted). Although the trial court in this case did not state what actions constituted exceptional cruelty, we nonetheless conclude that the record is more than adequate to show that this enhancement factor applies to the appellant.

Furthermore, the trial court found that the appellant abused a position of private trust in the commission of this offense. The appellant does not contest the application of this enhancement factor. The appellant used her position as the victim's wife to allow Miller and Massey into the appellant's home for the purpose of killing the victim. We conclude that the trial court correctly applied this enhancement factor to the appellant. See State v. Jackson, 946 S.W.2d 329, 334-35 (Tenn. Crim. App. 1996); State v. Ball, No. 03C01-9512-CC-00387, 1997 WL 674773, at *5 (Tenn. Crim. App. at Knoxville, October 31, 1997).

The appellant also argues that the trial court erroneously failed to apply several mitigating factors. The trial court did consider, under Tenn. Code Ann. § 40-35-113(13), that the appellant had assisted the State by testifying against her co-defendants. The State does not argue against the application of this factor and we agree that the trial court correctly applied it to the appellant. The appellant contends that the trial court should have found further mitigation because her statements resulted in the arrest of Massey and Miller. However, the appellant's original statement led the police away from Massey and Miller and implicated two other individuals. Additionally, the appellant's story changed each time she was questioned by the police. We conclude that the trial court correctly refused to allow additional mitigation for the appellant's "cooperation" with the authorities.

The appellant also maintains that there were unusual circumstances that suggested that she sustained no intent to violate the law. Additionally, the appellant claims that her mental state lessens her culpability for the offense. However, the appellant failed to raise these issues before the trial court and instead raises them for the first time on appeal. Therefore, the appellant has waived these issues. Tenn. R. App. P. 36(a); see also State v. McClure, No. 01C01-9505-CR-00145, 1997 WL 211254, at *9 (Tenn. Crim. App. at Nashville, April 30, 1997).

Next, the appellant contends that the trial court should have considered the fact that the appellant's lack of any prior criminal record. We have previously asserted that "[t]he absence of a prior criminal record, though not an enumerated mitigating factor, may be considered under the catch-all provision of [Tenn. Code Ann. §] 40-35-113(13) []." State v. Hicks, 868 S.W.2d 729, 731 n. 5 (Tenn. Crim. App. 1993). However, the trial court "is not required to consider this as a mitigating factor." State v. Williams, 920 S.W.2d 247, 261 (Tenn. Crim. App. 1995). Given the brutal nature of the crime, we cannot say that the trial court erred in refusing to apply this mitigating factor. In any event, even if this mitigating factor did apply to the appellant, it would be entitled to very little weight. Id.

Finally, the appellant argues that the trial court should have considered her age in mitigation. Our supreme court has stated that,
> [i]n determining whether this factor is to be applied, courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of her conduct.

State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993).

The appellant was seventeen years old, just two months shy of her eighteenth birthday, when the offense was committed. The appellant argues that, because she left home at a young age, became pregnant early, and married the father of her child, the trial court should have found that these circumstances indicated the appellant's immaturity. However, there is proof in the record that the appellant finished the tenth grade and continued her education by obtaining a nursing certificate. See State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995). Additionally, she

had been married to the victim for almost two years at the time of the murder. Moreover, the appellant previously had been charged with minor juvenile offenses, which suggests that the appellant had some familiarity with the criminal justice system. See State v. Jones, No. 03C01-9807-CR-00245, 1999 WL 538389, at *7 (Tenn. Crim. App. at Knoxville, July 14, 1999). Furthermore, as was evidenced by the appellant's repeated attempts to lie to the police and to minimize her role in the crime, the appellant obviously appreciated the nature of her behavior. We conclude that "the trial court acted within its prerogative in determining that the [appellant] was sufficiently mature to understand the nature of [her] conduct." Carter, 908 S.W.2d at 413.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE