IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2001

## STATE OF TENNESSEE v. ANTHONY LEON MOORE

**Appeal from the Circuit Court for Madison County
No. 00-134     Donald H. Allen, Judge**

**No. W2000-02862-CCA-R3-CD - Filed February 11, 2002**

A Madison County Circuit Court jury convicted the defendant, Anthony Leon Moore, of aggravated robbery, a Class B felony, and aggravated burglary, a Class C felony. The trial court sentenced him as a Range II, multiple offender to consecutive sentences of fifteen years in the Tennessee Department of Correction for the aggravated robbery conviction and ten years for the aggravated burglary conviction. The defendant appeals, claiming that (1) the evidence is insufficient to support his aggravated robbery conviction; (2) the trial court improperly enhanced his sentence for aggravated burglary; and (3) the trial court improperly found him to be a dangerous offender and ordered consecutive sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

C. Michael Robbins, Memphis, Tennessee; George Morton Googe, District Public Defender; and Vanessa D. King, Assistant Public Defender, for the appellant, Anthony Leon Moore.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun Alan Brown, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

This case relates to the robbery of Larry Felts. The victim testified that he was an art broker and that on November 4, 1999, he was in Madison County on a business trip. He said that he was staying in a first-floor room at the Comfort Inn in Jackson and that about 9:30 p.m., he was talking on the telephone to a client. He said that he was smoking a cigarette and that he opened the room's sliding glass door to let in fresh air. He said that suddenly, the glass door slammed open. He said that the defendant ran into his room and put a black handgun, with clear tape on its handle, to his head.

The victim testified that he put the telephone down and told the defendant to take his money and leave. He said that the defendant told him repeatedly that the defendant was going to kill him. He said that the defendant picked up the telephone and that the client, who was still on the line, told the defendant that the client was going to call the police. He said that the defendant told the client, "I don't give a damn. I don't care if you call the f***ing police because this is -- I'm going to kill this mother f***er." He said that the defendant stayed on the telephone with the client for about ten minutes. He said that one time, the defendant dropped the gun and then challenged the victim to try to get it. He said that otherwise, the defendant kept the gun pointed at the victim's head during the robbery.

The victim testified that after the defendant hung up the telephone, the defendant went through the victim's wallet, briefcase, and suitcase. He said that the defendant took one hundred twenty dollars, a pack of cigarettes, and a red cigarette lighter. He said that the defendant used the telephone to call someone to come and get the defendant. He said that the defendant smoked a couple of cigarettes and that the defendant stayed in his hotel room for thirty to forty-five minutes. The victim said that he was not physically injured but that the defendant kissed him on his right cheek before the defendant left the room. He said that as soon as the defendant left the room, he shut the sliding glass door, locked it, and called the police.

The victim testified that the defendant was wearing a Dallas Cowboys jacket and a stocking over his hair. He said that he could see the defendant's face clearly. He said that the day after the robbery, Investigator Jeff Austin showed him a photograph array and that he identified the robber's picture.

Terri Wallace testified that she knew the defendant and that he used to stay at her house occasionally. She acknowledged that about November 5, 1999, Investigators Austin and Golden came to her home and asked if they could search it. Ms. Wallace gave them permission to search, and the investigators took a Dallas Cowboys jacket that belonged to the defendant and a pellet gun from the house. At the time of the search, the defendant was not at Ms. Wallace's house, and she had not seen him for a couple of days. She said that her child had found the pellet gun outside and that it did not belong to anyone.

Investigator Jeff Austin of the Jackson Police Department testified that at 11:10 p.m. on November 4, 1999, he got a telephone call at his home. He said that in response to the call, he went to the Comfort Inn and that other officers were already present. He said that he took the victim to the police department and that the victim gave a formal statement. He said that after the victim gave a statement, he gave the victim a chance to calm down and took the victim back to the Comfort Inn. He said that the victim got a different room and spent the night at the hotel. He said that when he returned to work the next morning, Crime Stoppers had gotten a tip that the defendant robbed the victim. He said that based on the tip, he put together a photograph array, took the array to the Comfort Inn, and showed the array to the victim. He said that the victim identified the defendant as the robber.

Investigator Austin testified that he got a warrant to arrest the defendant. He said that while he was obtaining the warrant, Crime Stoppers got another tip that the defendant could be found at Terri Wallace's house. He said he and Investigator Rodney Golden went to Ms. Wallace's residence and asked her if they could search her home for any clothing or weapons that the defendant used in the robbery. He said that Ms. Wallace gave them permission to search and that they found a Dallas Cowboys jacket with a red lighter in one of the pockets. He said that they also found a Marksman BB gun upstairs in a chest of drawers. He said that the lighter and the gun were tested for fingerprints but that no usable prints were obtained. He said that the victim's hotel room was also tested for fingerprints but that no usable prints were found on the room's telephone or sliding glass door.

The prosecution showed Investigator Austin an evidence bag containing a Marksman BB gun, and he identified it as the gun that was found in Ms. Wallace's residence. When the prosecution asked Investigator Austin if the gun was secured in order that it could not be fired, he answered that it did not have a trigger housing in it. On cross-examination, Investigator Austin testified that when he and Investigator Golden found the gun, the gun's top slide would fall off and that the gun had clear tape on its slide and body.

Sergeant Jim Collum of the Jackson Police Department testified that on November 7, 1999, the police department received information that the defendant was at an apartment complex. He said that he went to the complex and found the defendant hiding in some shrubbery. He said that he arrested the defendant and escorted him to a police car. He said that without being asked any questions, the defendant stated, "I didn't do all these by myself" and "How many have ya'll charged me with?"

The defendant testified that about 9:00 or 9:30 p.m. on November 4, 1999, he was buying a pack of cigarettes at a store. He said that when he left the store, the victim confronted him and asked him about restaurants or nightclubs where the victim could get a drink. He said that he offered to show the victim some nightclubs and that the two of them walked in the direction of the clubs. He said that he asked the victim if the victim wanted to smoke marijuana and that the victim said yes. He said that he and the victim smoked a marijuana cigarette and then went back to the victim's hotel room to have a drink. He said that they drank whiskey and smoked another marijuana cigarette. The defendant testified that he left the hotel to buy a can of beer at a nearby gas station.

The defendant testified that when he returned to the victim's hotel room, the sliding glass door was open and that he walked into the room. He said that the victim was on the telephone. He said that the victim hung up the telephone and asked the defendant if the defendant could get more marijuana. The defendant said that he told the victim that he could get more marijuana for eighty dollars. He said that the victim gave him the money and that he left the victim's room. He said that he kept the eighty dollars and did not get the drugs for the victim.

The defendant denied having a gun on November 4, taking the victim's red lighter, or making any statements to Sergeant Collum. He acknowledged that the Dallas Cowboys jacket that the police found at Ms. Wallace's home belonged to him. On cross-examination, he said that he owned the red

lighter. The defendant said that after Sergeant Collum arrested him, Sergeant Collum read him his rights and that he elected to remain silent and did not say anything to Sergeant Collum. He said that Sergeant Collum and the victim were lying. He said that the victim was mad at him for taking the victim's money. He acknowledged being convicted in 1993 for theft of property valued over one thousand dollars.

The victim was called as a rebuttal witness and testified that he had never seen the defendant before the robbery. He denied going to clubs with the defendant or having a drink with him. He said that the defendant took one hundred twenty dollars, a pack of cigarettes, and a red lighter from him.

Sergeant Collum was called as a rebuttal witness and testified that he never Mirandized the defendant. He said that investigators, not patrol officers, Mirandized suspects.

The jury found the defendant guilty of aggravated robbery and aggravated burglary. It assessed fines of fifteen thousand dollars and five thousand dollars respectively.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for aggravated robbery. He contends that because the indictment only alleged that he robbed the victim with a deadly weapon and the gun used in the robbery was an inoperable pellet or BB gun, he cannot be guilty of that offense. Alternatively, the defendant contends that there is no evidence that he displayed the gun in a manner to lead the victim reasonably to believe that it was a deadly weapon. The defendant contends that the evidence only supports a conviction for robbery. The state contends that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A robbery is aggravated if it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1).

-4-

Taken in the light most favorable to the state, we believe that the evidence is sufficient to support the defendant's conviction for aggravated robbery. The victim testified that the defendant stormed into his hotel room and put a handgun to the victim's head. The defendant repeatedly told the victim that he was going to kill the victim. The victim testified that he was terrified and that he did not know what kind of gun the defendant held on him, just that it was a gun to his head. We believe that this evidence is sufficient to show, at least, that the defendant displayed the gun to lead the victim reasonably to believe it to be a deadly weapon.

## II.  SENTENCING

The defendant contends that the trial court improperly enhanced his aggravated burglary sentence and improperly ordered consecutive sentencing by finding him to be a dangerous offender. The state contends that the trial court properly sentenced the defendant. We believe that the defendant's sentence was proper.

At the sentencing hearing, the victim testified that he relived the robbery every day. He said that the defendant took away his feeling of personal freedom. He said that the crime caused him to purchase guns to protect himself and his family and that he was unable to work for two weeks after the robbery. He said that the robbery made him unable to trust people and that the defendant should be incarcerated for as long as possible.

The defendant testified that he was thirty years old. He said that he was innocent and accused the prosecutor of conspiring with the Jackson Police Department to convict him wrongfully. He asked the trial court to set aside his convictions because the Jackson police officers lied in their testimony and produced false evidence against him. The defendant said that his family had been supportive and that he would live with his mother if he were released from custody. On cross-examination, the defendant acknowledged having a 1993 felony conviction for theft of property valued over one thousand dollars and a 1991 felony conviction for robbery.

The defendant's presentence report states that the defendant has a long history of alcohol and drug abuse and that he has never completed any substance abuse programs. The defendant dropped out of high school but obtained his GED. He has never been married, has no children, and has never obtained permanent, full-time employment. The report reflects that in addition to the defendant's two prior felony convictions, he also has misdemeanor convictions for driving without a license, possession of alcohol by a person under the age of twenty-one, and public intoxication. The presentence report also reflects that in 1993, while the defendant was on probation for the 1991 robbery conviction, he committed theft of property valued over one thousand dollars. Moreover, while the defendant was on parole for the 1993 theft of property conviction, he absconded, and his parole was revoked. The defendant was returned to prison and was released from incarceration about three and one-half months before committing the offenses in question.

The trial court held that the defendant's two prior felony convictions justified sentencing him as a Range II, multiple offender and ordered that the defendant serve fifteen years for the aggravated robbery conviction and ten years for the aggravated burglary conviction. The trial court applied

enhancement factors (1) and (8), that the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the range and that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, to both offenses. Tenn. Code Ann. § 40-35-114(1), (8). For the aggravated burglary conviction, the trial court also applied enhancement factors (10) and (16), that the defendant had no hesitation about committing a crime when the risk to human life was high and that the crime was committed under circumstances in which the potential for bodily injury to the victim was great. Tenn. Code Ann. § 40-35-114(10), (16). The trial court ordered that the defendant's sentences run consecutively, finding the defendant to be a dangerous offender whose behavior indicates little or no regard for human life and who has no hesitation about committing a crime when the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4). Finally, the trial court imposed fines totaling twenty thousand dollars and ordered that the defendant pay one hundred twenty-four dollars in restitution to the victim.

When a defendant appeals the length, range, or manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169. In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

A. Enhancement of Aggravated Burglary Sentence

The defendant contends that the trial court improperly enhanced his sentence for aggravated burglary by finding that the defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(10). The state contends that the trial court properly enhanced the defendant's sentence because he robbed the victim with a pellet or BB gun, which is a deadly weapon, and because the defendant entered the hotel room without caring who occupied it. We believe that the defendant's ten-year sentence for aggravated burglary was justified.

The defendant was sentenced as a Range II, multiple offender for which the applicable range for a Class C felony is six to ten years. Tenn. Code Ann. § 40-35-112(b)(3). The presumptive sentence for a Class C felony is the minimum in the range when there are no enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then

reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Ashby, 823 S.W.2d at 169.

The trial court started at the minimum sentence of six years but increased the sentence to ten years after finding that four enhancement factors applied to the defendant's aggravated burglary conviction. The defendant contests the application of enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). Although the trial court applied factor (10) because it found that the defendant was armed with a deadly weapon and forced his way into the hotel room, the defendant contends that his use of an inoperable gun resulted in no risk to human life.

Initially, we note that the standard of proof required for finding a factual basis for sentencing within a range is the preponderance of the evidence standard. See State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995). For our review, though, we cannot reject such a finding unless the evidence preponderates against the finding. In this respect, we believe that the evidence does not preponderate against the trial court's finding that the defendant used a deadly weapon to rob the victim. Although Investigator Austin testified that the gun was inoperable when he found it at Ms. Wallace's house, it is not clear what the condition of the gun was at the time of the robbery. In addition, while Investigator Austin testified that the gun found at Ms. Wallace's home was a BB gun, Ms. Wallace testified that it was a pellet gun, and this court has determined that a pellet gun is a deadly weapon. See State v. Anthony Bowen, No. 1107, Knox County (Tenn. Crim. App. July 13, 1987). Thus, based on the trial court's finding that the defendant used a deadly weapon to rob the victim, the trial court properly applied enhancement factor (10) and found the defendant to be a dangerous offender for sentencing enhancement purposes.

Moreover, even if the trial court erred by applying enhancement factor (10), that fact would have no affect on the defendant's sentence because our de novo review reveals that the application of enhancement factors (1), (8), and (16) justified the trial court's increasing the defendant's sentence from six to ten years. The defendant has failed to show that the sentence was improper.

## B. Consecutive Sentencing

Next, the defendant contends that the trial court improperly found him to be a dangerous offender and improperly ordered that he serve his sentences consecutively. Specifically, the defendant contends that the evidence does not support the trial court's finding that he meets the statutory definition of a dangerous offender. See Tenn. Code Ann. § 40-35-115(b)(4). In addition, the defendant contends that the trial court ordered consecutive sentencing without making the appropriate findings on the record.

Consecutive sentencing is guided by Tenn. Code Ann. § 40-35-115(b), which states in pertinent part:

The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

. . . .

(2) The defendant is an offender whose record of criminal activity is extensive; [or]

. . . .

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high . . . .

For dangerous offenders, though, "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995); see State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). Rule 32(c)(1), Tenn. R. Crim. P., requires that the trial court "specifically recite the reasons" behind its imposition of a consecutive sentence.

In sentencing the defendant, the trial court held that the defendant used a deadly weapon to rob the victim. In addition, the trial court imposed consecutive sentences because it found that the defendant was a dangerous offender under Tenn. Code Ann. § 40-35-115(b)(4). The trial court stated on the record that it based its finding on the defendant forcing his way into the victim's hotel room, repeatedly threatening to kill the victim with a gun, staying in the victim's hotel room for thirty to forty-five minutes, and committing these crimes within three and one-half months of being released from incarceration for another felony conviction. The trial court stated that the defendant's crimes were very severe and that confinement of the defendant for an extended period of time was necessary to protect society.

As previously discussed, we cannot say that the evidence preponderates against the trial court's finding that the defendant used a deadly weapon to rob the victim. Therefore, we do not agree with the defendant's contention that he used an inoperable pellet or BB gun. The record supports the trial court's ruling that the defendant's behavior indicated little or no regard for human life and that the defendant had no hesitation about committing a crime in which the risk to human life is high. Furthermore, we believe that ample evidence exists to support the trial court's ruling that consecutive sentencing reasonably relates to the severity of the offenses. The defendant stormed into the victim's hotel room with a gun, repeatedly threatened to kill the victim, and remained in the victim's room for thirty minutes. We also believe that the record reflects that consecutive sentences are necessary to protect the public from further criminal conduct at the hands of the defendant. The defendant's criminal record, which includes robbery and the present offenses, exposes the defendant's inability to conform his behavior to the law. The defendant had been out of prison for only three and one-half months when he committed the present offenses; the presentence report

reveals that he committed the 1993 theft of property offense while he was on probation for the 1991 robbery conviction; and the defendant absconded while on parole for the 1993 theft of property conviction.

Moreover, even assuming arguendo that the trial court erred by finding that the defendant was a dangerous offender under Tenn. Code Ann. § 40-35-115(b)(4), after our de novo review, we believe that the defendant's extensive record of criminal activity also justifies consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(2). At the time of sentencing, the defendant was thirty years old and had been convicted of four felonies and three misdemeanors. He has displayed few signs of rehabilitation or improvement over his criminal history, and his behavior has progressed to more daring and more violent offenses. We note that nothing in the 1989 Sentencing Act prohibits consideration of prior criminal convictions and conduct for both enhancement and consecutive sentencing purposes as long as those sentences comply with the purposes and principles of the 1989 Act. State v. Davis, 825 S.W.2d 109 (Tenn. Crim. App. 1991). Under the circumstances, we believe that the defendant also qualified for consecutive sentences because of his extensive history of criminal conduct.

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction.

_____
JOSEPH M. TIPTON, JUDGE