IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 11, 2001

## JAMES DUMAS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P21475      L. Terry Lafferty, Judge**

_____

**No. W2000-01814-CCA-R3-PC  - Filed August 9, 2001**

_____

The petitioner filed a petition for post-conviction relief, claiming that he had received ineffective assistance of counsel during the sentencing hearing following his trial in which he was convicted of second degree murder.  Specifically, he argues that trial counsel should have presented evidence of his youth and mental condition.  The petitioner appealed after being denied relief by the post-conviction court.  Based upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Robert Little (on appeal) and John E. Finklea (at trial), Memphis, Tennessee, for the appellant, James Dumas.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Daniel R. Woody, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

The petitioner, James Dumas, is presently serving a twenty-five-year sentence in the Tennessee Department of Correction for second degree murder.  In this appeal as of right, petitioner challenges the denial of his petition for post-conviction relief in the Criminal Court for Shelby County.  The petitioner presents one issue for our review:  whether he was denied his constitutional right to effective assistance of counsel.  Petitioner's assertion that trial counsel was ineffective is

based on the performance of counsel at his sentencing hearing.[1]  Specifically, petitioner argues that counsel failed to present mitigating evidence that:  (a) because of his youth, petitioner lacked substantial judgment in committing the offense (mitigating factor (6)); (b) petitioner suffered from a mental condition that significantly reduced his culpability for the offense (mitigating factor (8)); and (c) because of his borderline intellectual functioning and mild visual motor processing deficits, petitioner lacked insight and judgment (mitigating factor (13)).  See Tenn. Code Ann. § 40-35-113(6), (8), and (13).  Following a hearing at which both the petitioner and trial counsel testified, the post-conviction court issued its order denying relief.  We have reviewed the entire record and affirm the judgment of the post-conviction court.[2]

## FACTS

The procedural history of this case is lengthy.  The record indicates that the murder was committed on May 12, 1993, when the defendant was three months shy of his eighteenth birthday. Following a jury trial at which he was represented by retained counsel, petitioner was convicted of first degree murder on June 23, 1994, and sentenced to life in prison.  He appealed the conviction, and this court determined that the evidence was insufficient to support a conviction for first degree murder but did support a conviction for second degree murder.  We remanded the case to the trial court for resentencing.  See State v. James Dumas, No. 02C01-9502-CR-00031, 1995 WL 580931

---

[1]Various other claims are alleged in petitioner's *pro se* petition, but petitioner's Second Amended Petition for Post-Conviction Relief, dated November 30, 1999, presents, as the sole ground for relief, the ineffective assistance of counsel at the sentencing phase, based on the failure of trial counsel to develop and present certain mitigating evidence. In his brief, petitioner asserts that his trial counsel failed to introduce evidence at his trial of a mental condition that would have negated an element of the offense, supposedly, the intent to commit the crime.  This allegation is nowhere supported by argument, citation, or reference to the record.  This issue is waived.  See Tenn. Ct. Crim. App. R. 10(b). Even if not waived, nothing in the psychological report of Dr. Parr indicates that the petitioner has, or has ever had, a mental condition that would preclude his forming the intent to shoot the victim.

[2]As a preliminary matter, we note that the State asserts for the first time on appeal that the petitioner's claim is time-barred.  Rule 49(c) of the Tennessee Rules of Criminal Procedure, in effect at the time of this petition, provides, in pertinent part, the following:

> If petitions for post conviction relief or other papers are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility, filing shall be timely if the papers are delivered to the appropriate individual at the correctional facility within the time fixed for filing.

According to the record, judgment was final in this cause on June 1, 1998; thereafter, petitioner had one year to timely file his petition for post-conviction relief.  See Tenn. Code Ann. § 40-30-202 (1997). The petition was filed in the Shelby County Criminal Court Clerk's Office on June 17, 1999.  We are unable to determine from the record before us whether the petition was delivered to "the appropriate individual at the correctional facility within the time fixed for filing."  See Neely v. State, 34 S.W.3d 879, 880 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 2000). The issue was not raised before the post-conviction court, and the hearing on the merits was held on June 12, 2000, without discussion of timeliness.  Given fair notice, the petitioner might have been able to produce the necessary documentation to show a timely filing from prison.  Accordingly, we will consider the petition on its merits.

(Tenn. Crim. App. Oct. 4, 1995). After a sentencing hearing following the remand, the petitioner was ordered to serve the maximum sentence of twenty-five years as a Range I, standard offender for second degree murder. He appealed that sentence. The judgment of the trial court was affirmed by this court. See State v. James Dumas, No. 02C01-9610-CR-00368, 1997 WL 584287 (Tenn. Crim. App. Sept. 19, 1997), perm. to appeal denied (Tenn. June 1, 1998). Petitioner then filed a petition for post-conviction relief, and a hearing was held at which he was represented by appointed counsel. Relief was denied, and the petitioner appealed. It is the denial of relief that is the subject of this appeal.

The facts of this case, as set out in State v. James Dumas, 1995 WL 580931, at *1, are uncontroverted:

> The evidence adduced at trial, in the light most favorable to the State, revealed that at about 9:00 p.m. on the evening of May 12, 1993, James Henry Ballard was walking down Sun Crest Avenue in Memphis when he saw the victim's white Mustang parked near the side of Sun Crest Drive. The appellant was standing at the driver's side door of the car. Ballard kept walking toward and then past the Mustang, and was approximately thirty to forty feet past the car when he heard someone say, "drop it off," followed by a gunshot. When Ballard turned around, he saw the Mustang automobile being driven down the street. The appellant was standing in the middle of the street holding a pistol. The appellant put the pistol in his pocket, looked around, and took off running. Ballard testified that he continued walking in the same direction that the Mustang had taken, and upon topping a hill, he saw that the Mustang had crashed into a tree. It was later discovered that the sole occupant of the Mustang was the victim, and that he had sustained a fatal gunshot wound to the chest. A twenty-dollar bill was found in the front floorboard of the automobile.

The evidence further showed that the victim, a cocaine addict, was a regular customer of the petitioner's. This court described the case as one that might be called "'a drug deal gone bad.'" Id.

Although the petitioner did not testify at his trial, he had maintained that he was not even on the street at the time of the shooting. Two alibi witnesses testified on his behalf, one petitioner's brother. At his April 3, 1996, sentencing hearing, the petitioner still vigorously maintained his complete innocence:

> Your Honor, I will be back in court again on appeal on my second-degree murder because I didn't kill nobody. So you-all will see me again on -- on -- I'm going to appeal this, whatever you sentence me,

-3-

Judge, and I'll be back again. Before it's all over with, I believe I'm going to -- I'm going to beat all of it because I didn't kill nobody.

Some four years after this statement, the petitioner testified to the following at his post-conviction hearing, admitting for the first time that he had killed the victim:

Q. You are telling the Court something different now than you did at that time; is that correct?

A. Yes, sir.

Q. What are you saying now about what happened?

A. You know, that at first I was saying I didn't have nothing to do with it, you know. I pleaded not guilty to the case. I pleaded not guilty to the case. I said I didn't have nothing to do with [it]. Over the years I sat and thought about it and came to my senses, you know. The only way I can get some forgiveness for this is admitting to it, you know.

Q. And did you in fact kill this man?

A. Yes, sir. I killed - - yeah.

## ANALYSIS

### I. Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective in that he failed to present any mitigating factors at petitioner's sentencing hearing following the remand of his case. It is the petitioner's contention that had his counsel presented mitigating factors based on the psychological report of Dr. Parr and on petitioner's age, he would have received a lesser sentence.

### A. Applicable Standard

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The U.S. Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. Petitioner must therefore, establish that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases[.]" Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

As for the prejudice prong of the test, the <u>Strickland</u> Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; <u>see</u> <u>also</u> <u>Overton v. State</u>, 874 S.W.2d 6, 11 (Tenn. 1994) (holding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the <u>Strickland</u> test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; <u>see</u> <u>also</u> <u>Goad v. State</u>, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. <u>See</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. <u>See</u> <u>Thompson v. State</u>, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. <u>See</u> <u>Denton v. State</u>, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996).

## B. Performance of Counsel

In the first prong of the <u>Strickland</u> test, petitioner must show that counsel's performance was deficient in that it fell below the level of competence demanded of attorneys in criminal cases. Here, the petitioner contends that, by failing to rely on the psychological report of Dr. Parr or the petitioner's age as bases for asserting mitigating factors at petitioner's sentencing hearing, the performance of his trial counsel fell below that level of competence to which the petitioner was constitutionally entitled.

The record shows that trial counsel has been licensed to practice law in Tennessee since 1967. His practice has included criminal cases since the beginning of his career, and such cases now constitute a sizable portion of his practice. He represented the petitioner from the time of his arrest through his first appeal, an appeal that resulted in a reduction of petitioner's conviction from first degree murder to second degree murder.

The psychological report referred to by the parties was a report prepared and signed by Dr. Robert M. Parr, clinical psychologist, and Mr. Perry Adams, psychological examiner, that was requested by the Memphis and Shelby County Juvenile Court. The report was based on a clinical interview, the verbal tasks of the Wechsler Adult Intelligence Scale–Revised, the Bender Visual-Motor Gestalt Test, and the Rorschach Test. It is dated May 25, 1993, thirteen days after the murder.

-6-

The report was apparently part of the petitioner's juvenile record, which was made a State's exhibit at the sentencing hearing. The report was also made an exhibit at the post-conviction hearing.

The psychological report reviewed the background of the petitioner, noting that petitioner had approximately eight other juvenile complaints against him. At the time of his arrest, he was living with his mother. He had seven sisters and three brothers and had no contact with his father, who apparently lived somewhere outside Memphis. According to the report, the petitioner denied that he had any knowledge of the crime. Petitioner admitted that he had previous arrests for "shoplifting, assault charge, weapon on school property and a burglary charge which I beat." The report described the petitioner as 6' 4" tall, weighing 235 pounds, neat and clean in appearance and in seeming good health. He was further described as polite and cooperative.

Two instances of prior mental health treatment were reported by petitioner. One was a six-week stay at St. Joseph Hospital in 1988 where he was sent "because [he] had a spell one day." The other was in 1990 when he and his sister were involved in outpatient therapy at Frayser Mental Health Center "for family problems about getting along." Petitioner told his examiners that he had had no other mental health treatment since the outpatient, group therapy sessions in 1990.

Petitioner's mental status was described in the following paragraph of the report:

> He did not appear to be excessively anxious or threatened in the testing situation, and he maintained a relaxed physical posture throughout. He was typically spontaneous in his verbal interactions, and he had no difficulty making and keeping direct eye contact with the examiner. There were no speech abnormalities, and verbal expressions were generally relevant, clear and coherent. No loose associations were observed. Additionally, he was oriented as to time, person and place, and there has reportedly been no history of delusions or hallucinations. The examiner noted no evidence of significant distress or disturbance during this evaluation. Insight and judgment are judged to be mild to moderately lacking due to borderline intellectual functioning.

The Bender Visual-Motor Gestalt Test showed scoreable errors in "distortion of shape. This is indicative of mild visual motor processing deficits." The report further assessed the petitioner's personality:

> The personality assessment gives no evidence of an overt or psychotic process, and reality testing appears to be adequate. The psychological data shows that this individual has very poor impulse control and is typically attracted to novelty and excitement. He has a great deal of difficulty in delaying gratification and frequently acts with very little consideration of consequences. He also finds it

difficult to accept responsibility for problems in his life and will rationalize shortcomings and failures by blaming people and events that he cannot control. He will likely impress others as being moody and irritable, and the protocol suggests rather intense feelings of anger which may be expressed overtly in occasional emotional outbursts. He reveals a moderately high potential for acting out and using poor judgment.

In conclusion, the examiners determined that the petitioner's assessment "failed to reveal serious psychopathology" or any reason to assume that "he is committable to an institution for the mentally retarded or psychologically disturbed."

At the post-conviction hearing, trial counsel testified that, although he had no direct recollection of reading this report, he was convinced, based on his years of practice and habit, that he would not have allowed the report to be admitted as evidence at the sentencing hearing without having reviewed it because, "I wouldn't have just said, okay, go ahead and introduce it. I just don't do that." The fact that trial counsel caught misstatements concerning the juvenile record of the petitioner supports this contention. Counsel testified that, in deciding not to rely on the psychological report, he "made a judgment call. If it was in there and I saw it, there were things in there I would probably not want the Court to see. . . . I think it would be a judgment call because some of the things in there were not helpful for us."

As to the petitioner's assertion that defense counsel also failed to argue his age as a mitigating factor, we note that defense counsel did, in fact, mention the age of petitioner at the sentencing hearing. In requesting the minimum sentence for petitioner, defense counsel noted, "This is a young man[,]" possibly hoping for some sympathy for his client. Nevertheless, to argue that petitioner's youth was a mitigating factor, defense counsel would have had to show that the defendant did not "appreciate the nature of his conduct." See State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995). Given the fact that the petitioner continued to claim at the sentencing hearing that he had no involvement in the shooting whatsoever, arguing to the sentencing court that the petitioner's youth affected his judgment in committing a crime he denied committing would have been at best an incongruous argument.

The post-conviction court determined the following:

> [Trial counsel] testified that he may have decided not to utilize Dr. Parr's psychological report due to both positive and negative factors present in the report. A review of the report would support such decision. This is a judgment call on the part of the attorney to argue such as the petitioner's lack of good judgment and limited intellectual ability. This is especially true in this case, since at trial and the sentencing hearing, the petitioner strongly insisted that he had nothing to do with the killing of the victim. This Court refuses to

-8-

second guess defense counsel's decision regarding what proof to submit at the sentencing hearing in this cause.

We agree with the post-conviction court that the decision not to rely on either the psychological report of Dr. Parr or the petitioner's age as mitigating factors was well within the range of competence demanded of attorneys representing defendants in criminal cases. Because petitioner has failed to meet the first prong of the Strickland test, we conclude that the post-conviction court did not err in denying relief to petitioner.

## C. Prejudice to Defense

Even if we were to determine that counsel's performance was deficient, the petitioner would still be required to show prejudice, that is, that, had he received effective assistance of counsel, the outcome of the sentencing hearing would have been different.

In this case, the sentencing court found no mitigating factors and defense argued for none. The sentencing court specifically asked if there were any mitigating circumstances defense wished it to consider or if the testimony of the petitioner would be the only evidence offered. After the petitioner testified, the sentencing court asked, "Okay. That's your mitigation, [trial counsel]?" Trial counsel replied, "Yes, sir." During this testimony that presented an opportunity for the petitioner to speak in his own behalf, petitioner was asked by the State if he had any remorse about the killing. Petitioner answered, "I didn't kill nobody. I don't know what you're talking about."

Without any mitigating evidence other than the testimony of the petitioner, the sentencing court found three enhancement factors to support a maximum sentence: enhancement factor (1), based on the petitioner's previous history of criminal convictions or criminal behavior; factor (9), based on the petitioner's use of a firearm in committing the murder; and factor (10), based on the petitioner's lack of hesitation about committing a crime where evidence showed that the shooting was in a residential community and at least two bystanders might have been harmed. See Tenn. Code Ann. § 40-35-114(1), (9), and (10). This court determined that the trial court properly applied each of these enhancement factors. See State v. James Dumas, No. 02C01-9610-CR-00368, 1997 WL 584287, at *2 (Tenn. Crim. App. Sept. 19, 1997), perm. to appeal denied (Tenn. June 1, 1998).

Petitioner here asserts that his counsel was deficient in failing to argue for the application of the following mitigating factors: (a) because of his youth, petitioner lacked substantial judgment in committing the offense (mitigating factor (6)); (b) petitioner suffered from a mental condition that significantly reduced his culpability for the offense (mitigating factor (8)); and (c) because of his borderline intellectual functioning and mild visual motor processing deficits, petitioner lacked insight and judgment (mitigating factor (13)). See Tenn. Code Ann. § 40-35-113(6), (8), and (13). As to factor (6), evidence indicated that the petitioner was almost eighteen years old and was a streetwise criminal. As to factor (8), the psychological report specifically excluded any mental disorder. As to the "catch-all" factor (13), nothing in the record or testimony of trial counsel indicates that the petitioner was not fully able to understand all aspects of his case. In fact, counsel

testified that the petitioner "[could] understand better than most, as I call them, juveniles. He understood the process very well, above what most of them would have come close to." While petitioner's verbal IQ score of 73 is considered borderline, there was no proof that petitioner was not in full command of his situation. Further, there was no proof offered that petitioner's mild visual motor deficits had any relevance to this case. None of the suggested mitigating factors would have been applicable. Therefore, petitioner has failed to show by clear and convincing evidence that the outcome of the sentencing hearing would have been different. All three enhancement factors were properly applied, and the weight to be given those factors rested within the sound discretion of the sentencing court. See State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

We conclude that, even had the performance of counsel been deficient—and we have determined that it was not—petitioner has failed to show prejudice.

## CONCLUSION

Having reviewed the entire record, we conclude that petitioner has failed to meet his burden of proving ineffective assistance of counsel by clear and convincing evidence. We, therefore, affirm the judgment of the post-conviction court in denying his petition for relief.

_____
ALAN E. GLENN, JUDGE